

ORDERED in the Southern District of Florida on June 8, 2007

Laurel Myerson Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO. 05-44854-BKC-LMI |
| PABLO CANOVAS | Chapter 7 |
| Debtor. _____/ | |
| MARCIA T. DUNN, Chapter 7 Trustee for the Estate of Pablo Canovas, <br>     Plaintiff, <br> v. | Adv. Case. No.: 06-1982-BKC-LMI |
| CANO & HARRY CORPORATION, INC., a Florida corporation, <br>     Defendant. _____/ | |
| MICHAEL R. BAKST, Chapter 7 Trustee for the Estate of Tania Quijano <br>     Intervener, <br> v. <br> MARCIA T. DUNN, Chapter 7 Trustee for the Estate of Pablo Canovas and Cano & Harry Corporation, Inc., a Florida corporation, <br>     Defendants. _____/ | |

**MEMORANDUM OPINION**

THIS MATTER came before the Court on the Plaintiff Chapter 7 Trustee and Intervener Chapter 7 Trustee's Joint Motion for Summary Judgment and Request for Judicial Notice (CP #41). For the reasons set forth below the Motion for Summary Judgment is GRANTED.

## BACKGROUND

Pablo Canovas (the "Debtor") petitioned for chapter 7 bankruptcy relief on October 14, 2005. The petition was filed in the Miami Division of this Court and was assigned Case No. 05-44854-BKC-LMI. Thereafter, Marcia T. Dunn (the "Trustee") was appointed chapter 7 trustee of the Canovas bankruptcy estate.

On October 14, 2005, Tania Quijano (hereinafter "Quijano") also sought chapter 7 bankruptcy relief. The Quijano petition was filed in the West Palm Beach Division of this Court and has been assigned Case No. 05-37359-BKC-SHF. Michael R. Bakst (the "Intervener") was appointed chapter 7 trustee of the Quijano bankruptcy estate.

On October 10, 2006, the Trustee filed her Adversary Complaint (CP #1) naming Cano & Harry Corporation, Inc., as the defendant. The Trustee's Adversary Complaint alleges that the Debtor was the owner and sole proprietor of Canovas Fish and Meat Market (the "Business"), located in Sebring, Florida. The Trustee further alleges that on August 3, 2005, the Debtor sold the Business to Time Savers Inc. of Sebring, and directed his attorney to disburse $18,557.70 of the proceeds (the "Payment") to the Defendant. The Trustee alleges that the disbursement was a transfer made on account of a commercial debt or "backup rent" owed by the Debtor to the Defendant.

Count I of the Trustee's Adversary Complaint seeks to avoid and recover the Payment as a preferential transfer pursuant to 11 U.S.C. §§ 547(b) and 550(a),

2

respectively. Count II of the Trustee's Adversary Complaint seeks to avoid and recover the Payment as a fraudulent transfer pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(B), Fla. Stat. §§ 726.105(1)(b), 726.106(1) and (2).

On November 28, 2006, the Defendant filed its Answer (CP #13) to the Trustee's Adversary Complaint denying knowledge of any allegations and asserting affirmative defenses to the Complaint.[1]

On November 1, 2006, Michael R. Bakst filed his Motion to Intervene (CP #6) in this adversary proceeding pursuant to Fed. R. Bankr. P. 7026. The Motion was granted by Order of this Court (CP #22). The Intervener's Adversary Complaint (CP #19) was filed on December 13, 2006. The Intervener's Adversary Complaint alleges that Quijano, not the Debtor, was the owner and sole proprietor of the Business. The Intervener's Complaint alleges that it was Quijano who sold the Business to Time Savers Inc. of Sebring and directed the disbursement of $18,557.70 to the Defendant on account of a commercial debt. Counts I and II of the Intervener's Adversary Complaint are virtually identical to those of the Trustee's Adversary Complaint.

On March 15, 2007, the Defendant filed its Response to Chapter 7 Trustee's Adversary Complaint (CP #40). The Defendant denies or asserts it is without knowledge of all allegations of the Intervener's Adversary Complaint, save admissions regarding the identity of the parties and the jurisdiction of the Court.

---

[1] The Defendant asserts that the Payment came from Quijano, not the Debtor, and that the Debtor was an "illegal alien" at the time of lease and is "estopped from claiming any of the monies [Quijano] used to pay Defendant." The Defendant's third affirmative defense asserts, without authority, that "the legal principal of pari de licto [sic] should be apropos [sic] as between Pablos Canovas (Husband) [sic] Tania Quijano (Wife).

3

On March 26, 2007, the Marcia T. Dunn and Michael R. Bakst (collectively the "Trustees") filed Plaintiff Chapter 7 Trustee and Intervener Chapter 7 Trustees' [sic] Joint Motion for Summary Judgment and Request for Judicial Notice (CP #41)(the "Joint Motion"). The Joint Motion seeks summary judgment in favor of the Trustees as to Count I (the preference claims) of their respective adversary complaints. The Defendant did not file a response to the Joint Motion.

The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. §157(b)(2)(A).

## DISCUSSION

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 governing summary judgment applies in an adversary bankruptcy proceeding. Fed. R. Bankr. P. 7056. Accordingly, summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In considering whether a genuine issue of material fact remains for trial, the Court must "view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Loren v. Sasser,* 309 F.3d 1296, 1301-1302 (11th Cir. 2002). However, a "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find

4

for that party." *Id.* at 1302 (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

"In addition to the [Trustees'] burden to show that the material facts are not genuinely in dispute, [they carry] the ultimate burden of persuasion as to all the elements of a preference voidable by Section 547(b) of the Code." *Young v. Scandore Paper Box Corp. (Matter of Lucasa Int'l, Ltd.)*, 13 B.R. 596, 598 (Bankr. S.D.N.Y. 1981)(citing 5 Collier on Bankruptcy ¶ 547.26 (15th ed.). Moreover, in evaluating the Trustees' Joint Motion, the Court must view the record evidence "through the prism of the evidentiary standard of proof that would pertain at trial on the merits." *Eli Lily & Co. v. Barr Labs, Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). With respect to their preference claims, the Trustees here must prove each element of section 547(b) by a preponderance of the evidence. *Official Committee of Unsecured Creditors v. Lerner (In re Diagnostic Instrument Group, Inc.)*, 283 B.R. 87, 92 (Bankr. M.D. Fla. 2002).

**B.    Preference Analysis**

"A preference is 'a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankruptcy estate.'" *Barrett Dodge Chrysley Plymouth, Inc. v. Cranshaw (In re Issac Leaseco, Inc.)*, 389 F.3d 1205, 1209 (11th Cir. 2004)(quoting *Union Bank v. Wolas*, 502 U.S. 151, 160-61 (1991)). Section 547(b) authorizes the trustee of a bankrupt estate to seek avoidance and recovery of such transfers made within 90 days of the petition date. 11 U.S.C. § 547(b).

ADV. CASE NO. 06-1982-BKC-LMI

To prevail in their respective preference actions, the Trustees must establish that the Payment was a transfer (1) made to or for the benefit of the Defendant (a creditor); (2) on account of an antecedent debt; (3) made while the debtor was insolvent; (4) within 90 days before bankruptcy; and (5) that enabled the Defendant to receive a larger share of the estate than if the transfer had not been made. *See Wolas,* 502 U.S. at 155.

The Trustees here contend that the Payment constituted a transfer of property of the bankruptcy estate of either the Debtor or Quijano and was made to or for the benefit of the Defendant, who was a creditor of the Debtor or Quijano by virtue of the Lease (defined below). As discussed above, the Trustees have the burden of identifying record evidence that they are entitled to judgment as a matter of law. The Lease Agreement attached to the Defendant's Answer to the Trustee's Adversary Complaint (the "Lease") establishes a debtor-creditor relationship, at least between the Defendant and Quijano, as the Debtor is not a party to the Lease.[2] Evidence of cancelled checks attached to the Defendant's Answer to Plaintiff's First Set of Interrogatories support a finding that the Defendant received a transfer on account of antecedent debt, since the undisputed deposition testimony of the Debtor states the Payment, represented by the cancelled checks, was for unpaid rent owed for several months. "In this summary judgment context, [the Defendant's] 'denial for lack of information' and failure to offer any contrary evidence must be taken as a confession that [the Defendant] has no evidence or information that would tend to rebut the [Trustees'] showing of preferential

---

[2] The Debtor, though not a party to the Lease, received the benefit of the tenancy as a tenant, assignee, or otherwise. The Defendant, in its Answer to the Plaintiff's First Set of Interrogatories, acknowledges receipt of funds in connection with the tenancy from the Debtor's attorney and closing agent. Under Florida law, a landlord may waive its right to object to an unauthorized tenancy by accepting rent and allowing possession. *See Amjems, Inc. v. F.R. Orr Const. Co., Inc.,* 617 F. Supp. 273 (S.D. Fla. 1985). For purposes of this opinion, the Court does not need to decide whether the Business was owned by the Debtor or Quijano.

effect." *Kirtley v. Consolidated Nutrition, L.C. (In re Freeney),* 187 B.R. 711, 716 (Bankr. N.D. Okla. 1995). Thus, there is no genuine issue that the first and second elements of a preference are satisfied.

With respect to the third element of a preference – that the transfer was made while the debtor was insolvent – the Bankruptcy Code presumes that the Debtor was insolvent during the 90 days prior to filing the petition. 11 U.S.C. § 547(f); *see also Glatter v. Mroz (In re Mroz),* 65 F.3d 1567, 1574 n.6 (11th Cir. 1995). The fourth element of a preference is that the transfer was made within 90 days of the bankruptcy filing. There is no question that evidence of checks made out to a creditor and "clearing" the creditor's account within 90 days prior to the petition date establishes a transfer for avoidance purposes. *Barnhill v. Johnson,* 503 U.S. 393 (1992); *see also Mukamal v. Enriquez (In re Rx Cardiovascular Specialties, Inc.),* 355 B.R. 873 (Bankr S.D. Fla. 2006). The evidence here establishes that such transfer occurred on August 4, 2005, seventy one (71) days prior to the petition date. Accordingly, the Trustees have demonstrated there is no dispute as to the third and fourth elements of a preferential transfer.

There is also no dispute as to the fifth element of a preference – that the transfer enabled the Defendant to receive a larger share of the estate than if the transfer had not been made. The general rule is "[u]nless the assets in a bankruptcy estate are sufficient to provide in liquidation a one hundred percent distribution to creditors, any unsecured [creditor] who receives a payment during the preference period is in a position to receive more than it would have in a Chapter 7 liquidation." *Flatau v. Tribble's Shoes, Inc. (Matter of Lawrence),* 82 B.R. 157, 160 (Bankr. M.D. Ga. 1988).

"The plaintiff in a preference action need not actually reconstruct a hypothetical Chapter 7 liquidation, with the precision of a forensic accountant, but may rely on an affidavit of one of the debtor's financial officers, the debtor's schedules or prior findings that the estate was administratively insolvent to establish that . . . non-priority unsecured creditors would have received less than 100% of their claims in a Chapter 7 liquidation." *Levine v. Custom Carpet Shop, Inc. (In re Flooring America, Inc.)*, 302 B.R. 394, 406 (Bankr. N.D. Ga. 2003)(internal citations omitted). The Trustees rely on the bankruptcy schedules of the Debtor and Quijano to show that "any creditor holding an unsecured claim who received a payment during the 90-day preference period received more than it would have received in a Chapter 7 liquidation." The Court, taking judicial notice of the bankruptcy schedules of both the Debtor and Quijano as authorized by Rule 201 of the Federal Rules of Evidence, *see also Cash Inn of Metropolitan-Dade County*, 938 F.3d 1239 (11th Cir. 1991), finds that the Trustees have shown that a one hundred percent distribution to unsecured creditors is not possible in either debtor's chapter 7 bankruptcy case. The Defendant has not disputed the accuracy of the information in the Debtors' respective schedules. Accordingly, the Trustees have demonstrated that there is no dispute as to any material fact regarding the fifth and final element of a preference.

## CONCLUSION

The Trustees have established that there is no dispute as to any material fact on each element of a preference, and the Defendant has failed to set forth specific facts showing that there is a genuine issue for trial. Accordingly, the Court finds that summary judgment is appropriate as to Count I of Trustees' respective adversary complaints. This opinion constitutes the Court's conclusions of law under Fed. R. Bankr.

P. 7052. A separate Partial Summary Judgment shall be entered in accordance with Fed. R. Bankr. P. 9021.

###

Copy furnished to:
Carlos Sardi, Esq.
Richard L. Massey, Esq.

*Attorney Sardi shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*